UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD A. GORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-005 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On January 3, 2017, Plaintiff Richard Gore filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. [DE 1] The matter is fully briefed and ripe for review. For the reasons stated below, the Court will remand this matter to the Commissioner for further proceedings.

**FACTUAL BACKGROUND**

Gore filed his initial applications for benefits alleging disability beginning March 15, 2010, due to a host of issues: mild degenerative disc disease and various other lower back ailments; osteoarthritis; left shoulder degenerative joint disease; gout; diabetes; sleep apnea; obesity; history of prostate cancer; asthma and shortness of breath; congestive heart failure; coronary artery disease; depression; and anxiety. His application was denied initially, on reconsideration, and following an administrative hearing in March 2015, at which he was represented by counsel. At that hearing, the ALJ heard testimony from Gore and vocational expert ("VE") Bruce Growick. The ALJ found that Gore had some severe physical and mental impairments but could still perform certain jobs available in the national and regional economy,

1

and he was therefore not disabled within the meaning of the Act. *See* 20 C.F.R. § 416.920(g). The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner.

## STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez,* 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must

provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## DISCUSSION

Disability insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, then in between steps three and four, the ALJ then assesses the claimant's residual functional capacity, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step

3

five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Here, Gore offers two overarching reasons for remand: (1) the ALJ failed to support her RFC with substantial evidence; and (2) the ALJ's assessment of Gore's credibility was legally insufficient. For the reasons expressed below, the Court will remand this matter to the Commissioner due to the ALJ's failure to support her RFC with substantial evidence and will invite the ALJ to address several of Gore's other contentions on remand.

### A. Unsupported RFC

Dr. Smejkal, a consultative examiner, evaluated Gore on November 19, 2012. (R. 1237-43). Dr. Smejkal found that Gore "is unable to stoop and squat." (R. 1240, 1242). Gore argues that the ALJ failed to consider these limitations, thereby rendering her RFC flawed. [DE 22 at 17] In making a proper RFC determination, the ALJ must consider *all* of the relevant evidence in the record, *even as to limitations that are not severe*. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (emphasis added citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to her findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at 888. Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate her justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

4

In relevant part, the ALJ assigned Gore the following RFC:

[C]laimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours of an 8 hour workday, and sit for about 6 hours of an 8 hour workday. He can occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl.

(R. 15). So, the ALJ determined that Gore can perform light work requiring him to occasionally stoop, but nowhere does the ALJ explain how she reached this finding in the face of evidence from Dr. Smejkal that Gore could not perform this function. She therefore does not provide the necessary "logical bridge" explaining the leap from the medical record to her conclusion that Gore can occasionally stoop. *Terry*, 580 F.3d at 475. An ALJ must consider the entire record and cannot selectively ignore evidence from an examining physician's report without explanation, especially where that report contains limitations that would otherwise cut against the RFC determination. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *see also Craft*, 539 F.3d at 677-78 (ALJ's RFC determination failed to build logical bridge between evidence and limitations where ALJ failed altogether to mention physician's report that contained evidence of limitations critical to the RFC analysis). The Commissioner does not respond to this argument.

While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering her decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Here, the ALJ made multiple references to Dr. Smejkal's report (R. 17-19), but only when those references supported her RFC finding. She glossed over Dr. Smejkal's conclusion that Gore cannot stoop, without explanation, and instead selectively discussed the findings related only to his vision and upper extremities. *Id.* The ALJ's exclusion of Motts's inability to stoop or squat is particularly significant, given that she found he could

perform light work. According to SSR 83-10, which describes the requirements for light jobs, "[t]he lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." Moreover, "[s]ome stooping … is required to do almost any kind of work…," SSR 85-15; POMS DI 25020.005, including two out of the three jobs identified by the vocational expert here. *See* DOT 754.685-014, 1991 WL 680374 (machine feeder requires occasional stooping); DOT 319.677-014, 1991 WL 672771 (food preparer requires occasional stooping). By failing to consider Dr. Smejkal's finding that Gore is *unable* to stoop – or at least explain why to discount it – the ALJ picked over a critical fact in order to craft her RFC and eventual conclusion. This warrants reversal and constitutes the very type of cherry-picking *Denton* prohibits. *See* 596 F.3d at 425; *see also Thomas v. Colvin*, 534 Fed. Appx. 546, 551 (7th Cir. 2013) (finding that the ALJ failed to resolve inconsistencies between the reviewing doctor's opinion that the plaintiff could stoop occasionally, and the consultative examining doctor's finding that the plaintiff had only 50 degrees of flexion in the lower back and "was unable to squat"); *Golembiewski*, 322 F.3d at 917 (remanding, in part, because the ALJ did not discuss an apparent conflict between the state agency physician's opinion that the plaintiff could stoop occasionally and a prior medical finding of 40 degrees of lumbar flexion); *Luckett v. Berryhill*, 2:16-CV-223, 2017 WL 4174252, at *7 (N.D. Ind. Sept. 17, 2017) (remanding where ALJ did not resolve inconsistency between her conclusion that plaintiff could occasionally reach in all directions and medical records evidencing significant shoulder impairment). The appropriate relief for this error is remand for further proceedings, not the immediate award of benefits as requested by Gore's counsel. [DE 22 at 26]

**B.     Additional Items on Remand**

On remand, the Court encourages the ALJ to explore whether Gore's obesity exacerbates his overall condition and other limitations. When assessing a claimant's credibility, an ALJ "must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); SSR 02-1p). "Failing to acknowledge this effect may impact the ALJ's credibility determination" and may result in her failure to build the necessary logical bridge between the evidence and her conclusions. *Id.* (citing *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005)). While the ALJ referred to Gore's obesity in her opinion (R. 17), she did not consider it in combination with his other impairments, nor did she assess whether his obesity had any aggravating impact on his back issues, degenerative joint disease, osteoarthritis, etc.

The Commissioner claims otherwise. [DE 24 at 7] She argues that the ALJ "explained that Plaintiff's obesity was one of the major causes of some of the limitations included in the RFC" because the ALJ found that, "other than obesity," the findings regarding Plaintiff's ability to stand and walk were mild. *Id.* (citing (R. 17)). The Court finds this defense unpersuasive. The opinion excerpt cited by the Commissioner is more aptly characterized as a passing reference than as an "explanation." As the Seventh Circuit has instructed, "[w]e keep telling the Social Security Administration's administrative law judges that they have to consider an applicant's medical problems in combination." *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) (holding that the ALJ gave unsound reasoning in determining claimant was not disabled where she gave meager attention to plaintiff's obesity). The Court repeats these words here for the ALJ's benefit.

7

Next, the Court points out a factual discrepancy in the ALJ's opinion that may impact her RFC and credibility assessment. The ALJ asserts that Gore only seeks treatment for his gout flareups "every few months on average" as opposed to twice per week, like he alleges. (R. 20). However, as Gore argues with substantial record citations, his gout flareups occur much more frequently than once every few months. [DE 22 at 16] In fact, the record indicates that he averages a gout flareup once per month. *Id.* While this is still inconsistent with Gore's allegation that he has flareups every two weeks (R. 59), the rate of these episodes is significant given the VE's testimony that workers who miss 1.5 days per month, or 18 days per year, cannot sustain full-time competitive work. (R. 71). The frequency of his gout flareups alone approach this level, and thus they could jeopardize his ability to engage in full-time work activity.

The Court also cautions the ALJ against drawing blank conclusions from Gore's history of substance abuse. In assessing Gore's credibility, the ALJ stated that "[t]he claimant's excessive use of substances and inconsistent dates at which he became sober cannot be ignored." (R. 18). The ALJ does not explain what she means by this statement, nor why or how these facts play into her decision. The Commissioner concedes this is problematic. [DE 24 at 10] SSR 16-3p makes clear that the evaluation of a claimant's subjective statements are not meant to be an inquisition into his character.[1] To the extent the ALJ engaged in a character-based credibility determination by considering Gore's substance abuse, she committed error. *See Corral v. Berryhill*, No. 16-cv-4315, 2017 WL 3070722 (N.D. Ill. July 19, 2017) (remanding where ALJ

---

[1] SSR 16-3p did not become effective until after the ALJ's decision, but its reasoning nonetheless applies because it is a clarification of law rather than a change in law. *Quinones v. Colvin*, No. 15 CV 6072, 2017 WL 337993, at *3 (N.D. Ill. Jan. 23, 2017) (citing *Quails v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6 (N.D. Ill. Apr. 27, 2016)).

based her findings in part on facts about claimant's work history that she determined undermined his testimony in terms of his personal credibility).

Finally, the Court invites the ALJ to take Gore's limited sophistication and status as a layperson into account when assessing his credibility. *See Sarchet v. Chater*, 78 F.3d 305, 308-09 (7th Cir. 1996) (finding error where ALJ discredited unsophisticated claimant's belief that she suffered a heart attack when in actuality she experienced an episode of tachycardia; claimant may have mistakenly believed she had a heart attack). Gore possesses no base of medical knowledge, and so it should come as no surprise if his statements do not always technically align with the record. For example, he reported to the consultative examining physician in November 2012 that he would be undergoing radiation for prostate cancer for eight weeks, followed by blood work to look for results. (R. 1237). In actuality, Gore's radiation ended in August 2012 (R. 1375, 1441), but he continued receiving chemotherapy from then until March 2014. (R. 1441-42). Because Gore is a layperson with limited sophistication, the ALJ should consider whether his misstatements might be due to an honest misunderstanding as opposed to being born of a motivation to deceive the administration.

## CONCLUSION

For the reasons stated herein, the Court hereby **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: March 19, 2018

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court